UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| YVONE RICE AND RALPH RICE, individually and on behalf of E.R., a minor, | CASE NO. 5:22-cv-1836 |
| PLAINTIFFS, | JUDGE SARA LIOI |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| GOVERNING AUTHORITY OF THE BIO-MED SCIENCE ACADEMY, et al., | |
| DEFENDANTS. | |

Before the Court is the motion of defendant Educational Service Center Council of Governments Governing Board ("ESC-COG") for judgment on the pleadings under Fed. R. Civ. P. 12(c). (Doc. No. 13 (Motion).) Plaintiffs Yvone Rice and Ralph Rice, individually and on behalf of E.R., a minor ("the Rices" or "plaintiffs"), filed a memorandum in opposition (Doc. No. 18 (Opposition)), and ESC-COG filed a reply (Doc. No. 19 (Reply)). For the reasons set forth herein, the motion is granted and plaintiffs' claims against ESC-COG are dismissed. The case will proceed solely against defendants Governing Authority of the Bio-Med Science Academy and Northeast Ohio Medical University.

**I.  Background**

On October 12, 2022, the Rices filed a complaint on behalf of themselves and their minor son E.R. against three (3) defendants, including ESC-COG,[1] which is alleged to be a "publicly

---

[1] The other two defendants are Governing Authority of the Bio-Med Science Academy ("Governing Authority"), alleged to be a "public school district that operates Bio-Med Science Academy ["Bio-Med"], which is a Science, Technology, Engineering, and Mathematics ('STEM') school pursuant to Ohio Revised Code Chapter 3326[,]" and

funded political subdivision that employs personnel to perform administrative, teaching, non-teaching and substitute services for member school districts, partner agencies and other governmental entities, including since January 1, 2020, the hiring of Bio-Med's staff and the leasing of Bio-Med's personnel to Bio-Med as a purchased service." (Doc. No. 1 (Complaint) ¶ 8.) The complaint asserts claims of disability discrimination under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–134 ("ADA"), for defendants' alleged failure to assist E.R., a student at Bio-Med, with the handling of his service dog at school. (*Id.* ¶ 1.)

On December 12, 2022, ESC-COG filed its answer to the complaint. In responding to paragraph 8 of the complaint, ESC-COG states:

> [T]his Defendant admits that it exists and is given certain authority pursuant to the Ohio Revised Code, that this Defendant consists of political subdivisions; that this Defendant, in part, provides contractual services to schools related to fiscal and accounting services; that this Defendant entered into Fiscal Services Contracts with Bio-Med that effective January 1, 2020, and through the current date provided only for accounting services, employment funding services, and human resources services to Bio-Med (See Attached Exhibit A Fiscal Services Contracts); and that this Defendant has no authority or involvement in relation to providing or determining whether to provide Plaintiffs with the services relating to the service dog. Further responding to said Paragraph 8, this Defendant denies or denies for want of information all allegations not expressly admitted herein.

(Doc. No. 10 (Answer) ¶ 6.) ESC-COG denies the allegations of paragraph 1 of the complaint, asserting that "the substance of Plaintiffs' claims is that E.R. has been denied a free appropriate public education as required by the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 USC 1414 et seq." (*Id.* ¶ 1.)

---

Northeast Ohio Medical University ("NEOMU"), alleged to be a "public university that, prior to January 1, 2020, had hired and provided the personnel who were employed at [Bio-Med's] facilities." (Doc. No. 1 ¶¶ 7, 9.)

Plaintiffs allege that "Ohio's Educational Service Centers, including ESC-COG, receive about 9% of their funding from federal sources[,]" and that, "[a]s recipients of federal funding, Defendants are subject to Section 504 of the Rehabilitation Act." (Doc. No. 1 ¶¶ 14, 16.) ESC-COG denies the allegations in paragraphs 14 and 16 of the complaint and, with respect to paragraph 14, asserts that "it is not an Ohio Educational Service Center, that it is a legally separate body politic and corporate that meets the definition of a regional council of governments under Chapter 167 of the Ohio Revised Code, and that it does not receive any federal funding. (See Ex. B ESC-COG 2021 Ohio Audit.)" (Doc. No. 10 ¶¶ 10, 11.)

The complaint alleges that E.R., a student at Bio-Med, and the minor son of the Rices, has been diagnosed with various disabling conditions that substantially limit, *inter alia*, his ability to engage in the major life activities of caring for himself, walking, speaking, learning, thinking, and communicating, all within the meaning of the ADA. (Doc. No. 1 ¶¶ 6, 18, 23, 25, 26.)

In April of 2016, E.R.'s treating physician prescribed E.R. a service dog for his autism diagnosis. (*Id.* ¶ 28.) In May of 2016, the Rices applied to 4 Paws for Ability for a service dog to assist E.R. By April of 2019, 4 Paws for Ability had identified an appropriate dog to be trained for services specific to E.R.; at the cost of $40,000 (of which the Rices were responsible for $15,000), 4 Paws for Ability first trained the dog—named Greta—and then trained E.R. (*Id.* ¶¶ 29–39.)[2]

The complaint generally alleges that E.R. is usually able to give Greta appropriate verbal commands, but occasionally needs temporary assistance with such commands when he is

---

[2] As alleged in the complaint, "[a]utism inhibits E.R.'s ability to perceive danger, and causes meltdowns, elopement (wandering), and stimming (repetitive body movements or repetitive movements of objects, such as flapping arms over and over)." (Doc. No. 1 ¶ 24.) To assist E.R., "Greta [who is controlled by E.R. via a tether or a leash] is trained to sit down to prevent elopement, to apply deep pressure to prevent or limit meltdowns, and to disrupt stimming." (*Id.* ¶¶ 42, 44.) Greta is also "trained to go through the school day without needing to be walked, fed, or to relieve herself." (*Id.* ¶ 43.)

3

experiencing autistic meltdowns. (*Id.* ¶ 45.) The Rices allegedly asked Bio-Med to supply an aide to assist E.R. in giving Greta verbal commands on those occasions when E.R. was unable to do so because of an autistic meltdown, but Bio-Med refused. (*Id.* ¶¶ 46–47; *see also generally* ¶¶ 48–94 (outlining the Rices' efforts to work with Bio-Med to obtain assistance with Greta for E.R.).) The complaint alleges that, ultimately, "[Bio-Med's] refusals have caused E.R. to be separated from Greta when he attends school[,]" resulting in E.R.'s "miss[ing] class time on numerous occasions[]" because, absent Greta's presence, E.R. had to "take a walk or go out in the hall to overcome an episode of anxiety or a similar incident." (*Id.* ¶ 103.) Allegedly, "[E.R.'s] challenges would have been mitigated significantly, if not avoided completely, had [Bio-Med] granted the accommodations that Plaintiffs have requested." (*Id.* ¶ 109.)

Having exhausted their administrative remedies, the Rices brought this lawsuit.[3]

## II. Discussion

### A. Legal Standard

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). "[A]ll well-pleaded material allegations of the pleadings of the opposing party [here, the Rices] must be taken as true, and the motion may be granted only if the moving party [here, ESC-COG] is nevertheless

---

[3] The Rices previously brought Case No. 5:20-cv-2199, which was dismissed without prejudice on August 31, 2021, for failure to exhaust administrative remedies.

clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted).

"A complaint need not contain 'detailed factual allegations.' But it must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *LM Ins. Corp. v. Criss for Estate of Szuhay*, 716 F. App'x 530, 533 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Mere labels . . . are not enough[,]" *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017), and the Court also "need not accept legal conclusions in the complaint as being true[,]" *Eye Ctrs. of Am., LLC v. Series Protected Cell 1, a Series of Oxford Ins. Co. TN, LLC*, No. 22-5138, 2022 WL 13983763, at *2 (6th Cir. Oct. 24, 2022) (citing *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020)), unless the complaint has "supported [them] with enough pleaded facts[.]" *Bates*, 958 F.3d at 480. Nor should a court accept as true "a legal conclusion couched as a factual allegation." *Rondigo, L.L.C. v. Town of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555 (further citation omitted)).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence . . . , its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

B.  Analysis

ESC-COG raises two arguments in support of its motion for judgment on the pleadings. First, ESC-COG asserts that it had no involvement in the decisions regarding E.R.'s service dog and, therefore, neither disability discrimination claim can be sustained against it. Second, ESC-COG argues that it does not receive federal funds and plaintiffs, therefore, cannot prove one element of their *prima facie* case of disability discrimination.

As an initial matter, plaintiffs challenge ESC-COG's reliance upon two exhibits attached to ESC-COG's answer to the complaint. The Court will address that issue first and then turn to ESC-COG's two arguments.

1.  Propriety of considering exhibits to the answer

In two sentences within their opposition brief, plaintiffs assert, without legal support or any meaningful argument, that the exhibits attached to ESC-COG's answer (and relied upon by ESC-COG to challenge allegations in the complaint) "cannot be considered on a motion for judgment on the pleadings[.]" (Doc. No. 18, at 2.[4])

In ruling on a Rule 12(c) motion, the court considers all available pleadings and may also consider: "(1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted).

---

[4] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system.

6

Exhibit A to ESC-COG's answer (Doc. No. 10-1) contains several fiscal services contracts between ESC-COG and Bio-Med. These are written agreements that can be considered under Fed. R. Civ. P. 10(c), which notes that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Under Fed. R. Civ. P. 7(a)(2), an answer is a pleading.

Exhibit B to ESC-COG's answer (Doc. No. 10-2) is the "Regular Audit" of ESC-COG performed by the Ohio Auditor of State for the year ended June 30, 2021. It is a public record available on the Auditor's website. (*See* Fed. R. Evid. 803(8) (a document is a "public record" if it is a "[a] record or statement of a public office" and "it sets out . . . a matter observed while under a legal duty to report" and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness[]").) The Court may take judicial notice of such records on a motion for judgment on the pleadings. *See Lynch v. Leis*, 382 F.3d 642, 647 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

Moreover, as already noted, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss [or for judgment on the pleadings] into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *see also Liebold v. Cedar Fair Ent. Co.*, No. 3:20-cv-498, 2021 WL 1214828, at *2 (N.D. Ohio Mar. 31, 2021).

The agreements in Exhibit A, aside from being a "part of the pleading [*i.e.*, the answer] for all purposes[,]" illuminate the relationship between ESC-COG and Bio-Med—a matter that is integral to plaintiffs' claims against ESC-COG—and the agreements are useful for testing the legal conclusions in the complaint relating to that alleged relationship. Therefore, for this additional reason, Exhibit A can be considered on a motion for judgment on the pleadings.

Plaintiffs allege in their complaint that ESC-COG receives federal funds. Exhibit B is arguably integral to that issue. Therefore, aside from being properly considered as a public record, Exhibit B may be considered on a motion for judgment on the pleadings for this additional reason.

In light of the above, the Court rejects plaintiffs' argument that Exhibits A and B to ESC-COG's answer cannot be considered in the context of the instant motion for judgment on the pleadings.

### 2. Discrimination claims against ESC-COG are unsustainable

As its first challenge to the complaint and in reliance on Exhibit A to its answer, ESC-COG asserts that its relationship with defendant Bio-Med (and, in turn, to the plaintiffs) is governed by a Contract for the Provision of Fiscal Services under which ESC-COG's role is limited to providing accounting services, employment funding services, and human resources to Bio-Med. ESC-COG argues that these various contracts confirm it had no involvement or authority with respect to any decisions relating to E.R.'s service dog. (Doc. No. 13, at 4.)[5]

The Court concludes that ESC-COG is legally correct that the relationship between ESC-COG and Bio-Med is dictated by the fiscal services contracts attached as Exhibit A to ESC-COG's answer. These contracts establish that ESC-COG's role in relation to Bio-Med is limited to providing accounting services to Bio-Med. (*See*, Doc. No. 10-1 at 1–2, 7–8, 13–14, and 18–19 (itemizing the particular "services" to be performed by ESC-COG under the contracts).) There is

---

[5] ESC-COG also argues that the relevant contracts became effective *after* all the decisions relating to E.R.'s service dog as alleged in the complaint. This fact may or may not be established by the contracts, the first of which appears to have been effective July 1, 2019 (*see* Doc. No. 10-1, at 4), which would have been just before one or two of the final allegations in the complaint (*see* Doc. No. 1 ¶¶ 85, 88). Admittedly, all the other contracts became effective after the facts alleged in the complaint. But the Court concludes that, for purposes of this defendant's motion, this issue need not be resolved, since it is the *nature* of the contractual services provided by ESC-COG to Bio-Med that is determinative, not *when* those services were provided.

nothing in the fiscal services contracts to suggest that ESC-COG has any involvement or authority with respect to providing any student services, including services relating to E.R.'s service dog.

In their opposition brief, the Rices argue that this Court must take as true that ESC-COG "employs personnel" to "perform administrative, teaching, non-teaching and substitute services" at Bio-Med, including "the hiring of Bio-Med's staff and the leasing of Bio-Med's [sic][6] personnel to Bio-Med as a purchased service." (Doc. No. 18 at 6 (citing Doc. No. 1 ¶ 8).)

The "employment" status of persons who perform contracted services, as well as the nature of those contracted services as set forth in the fiscal services contracts, are legal matters governed by the terms of the contracts themselves. Construction of a contract (provided it is unambiguous) is within the province of the Court. *See, e.g.*, *Reed v. Freebird Film Prod., Inc.*, 664 F. Supp. 2d 840, 845 (N.D. Ohio 2009) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999)). Under the law cited above, the "legal conclusions" in the complaint regarding employment relationships and services performed need not be accepted by the Court where, as here, the actual contracts attached to a pleading (*i.e.*, the answer) confirm a different relationship.

Here every one of the fiscal services contracts attached to the answer establish the following:

- § I: "Services" performed by ESC-COG include five specifically identified *fiscal* services (month end accounting; accounts payable/receivable; payroll; accounting/fiscal support/tax reporting/general office support; and EMIS[7]/record keeping);

- § III: Each of these five fiscal services is associated with a specific contractual fee, all but one of which (*i.e.*, payroll services) are billed quarterly by ESC-COG to Bio-Med;

---

[6] It appears to the Court that plaintiffs meant to allege "the leasing of *ESC-COG's* personnel to Bio-Med as a purchased service[,]" since Bio-Med would not "lease" or "purchase" its own employees.

[7] EMIS stands for "Education Management Information System."

> § III: "'Services' include . . . the costs of all compensation and benefits paid or payable to any person assigned to Bio-Med under this Agreement[;]" and,
>
> § II: "The individuals performing Services pursuant to this Agreement will at all times remain ESC[-]COG employees."

(Doc. No. 10-1, *passim*.) Notwithstanding the conclusory allegation in the complaint that ESC-COG provides "administrative, teaching, . . . and substitute services[,]" to Bio-Med, there is nothing in any of the fiscal services contracts—the authenticity of which is notably not challenged by plaintiffs—to suggest that ESC-COG provides anything but purely *fiscal* services to Bio-Med and that these services are performed by ESC-COG employees, whose employment is paid for as part of the fees Bio-Med pays under the contracts. Even taking as true the allegation in the complaint that ESC-COG also provides "non-teaching" services (*i.e.*, these identified fiscal services), there is nothing in the complaint that connects these fiscal/non-teaching services in any way to the decisions regarding E.R.'s service dog that form the basis of plaintiffs' claims. Plaintiffs argue that "[i]t is certainly plausible to think that the discriminatory decisions were shaped by accounting, employment funding and human resources factors." (Doc. No. 18 at 6.) Maybe; but to sustain a claim *against ESC-COG*, plaintiffs must allege and show that those fiscal services performed by ESC-COG were shaped by discrimination. In other words, plaintiffs must allege and show that ESC-COG employed certain accounting or funding methods with the intent to discriminate and, in particular, with an intent to discriminate against E.R. There are no such allegations in the complaint.

Taking the allegations in the complaint as true and resolving all inferences in plaintiffs' favor, plaintiffs cannot demonstrate that ESC-COG engaged in any discrimination against E.R.

10

### 3. Whether ESC-COG receives federal funding

In order to make out a *prima facie* case of disability discrimination, plaintiffs must prove that E.R. was "'subjected to discrimination under any program or activity receiving Federal financial assistance[.]'" *Evans v. Ohio Pub. Ret. Sys.*, No. 2:07-cv-1061, 2008 WL 4849119, at *7 (S.D. Ohio Nov. 6, 2008) (citations omitted).

ESC-COG asserts that the complaint makes the legally incorrect statement that ESC-COG is an Educational Service Center that receives federal funding, which ESC-COG denies. (Doc. No. 13, at 8.) ESC-COG argues alternatively that, if it does not receive federal funding, plaintiffs' Section 504 claim against it fails as a matter of law.

ESC-COG points generally to Exhibit B to its answer (Ohio State Auditor's regular annual audit of ESC-COG) as proof that it receives no federal funding. According to Exhibit B, ESC-COG is "a legally separate body politic and corporate that meets the definition of regional council of governments under Chapter 167 of the Ohio Revised Code[,]" not an Educational Service Center. But, even if that is true, ESC-COG does not explain how that fact, standing alone would establish that ESC-COG receives no federal funds, nor does it point to any particular portion of Exhibit B in support of that assertion. Although the Court's own examination of this document has located no mention of federal funds as a source of revenues or income, at this juncture, that is simply not evident from Exhibit B alone.

That said, even if ESC-COG receives federal funding (which the Court is not deciding), the Court has already determined that plaintiffs have failed to assert a plausible claim against ESC-COG because, given the contracts that govern the specific services ESC-COG provides to Bio-Med, plaintiffs have failed to allege facts sufficient to show that ESC-COG was involved in any alleged discriminatory conduct against E.R.

**III.    Conclusion**

For the reasons set forth above, the motion for judgment on the pleadings (Doc. No. 13) is granted. All claims against defendant Educational Service Center Council of Governments Governing Board are dismissed and the case will proceed only against the remaining two defendants.

**IT IS SO ORDERED**.

Dated: June 20, 2023

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE
CHIEF JUDGE**